CIVILLE & TANG, PLLC
SUITE 200, 330 HERNAN CORTEZ AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868
FACSIMILE: (671) 477-2511

*Attorneys for Defendant*
*Ginger Perez Hamamoto*



FILED
DISTRICT COURT OF GUAM
AUG 24 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL CASE NO. 06-00018 |
| ) | |
| Plaintiff, ) | |
| ) | DEFENDANT GINGER PEREZ |
| vs. ) | HAMAMOTO'S RESPONSE TO |
| ) | PRESENTENCE INVESTIGATION |
| GINGER PEREZ HAMAMOTO, ) | REPORT AND SENTENCING |
| ) | MEMORANDUM |
| Defendant. ) | |
| ———————————————) | |

**I. Response to Presentence Investigation Report.**

Defendant, Ginger Perez Hamamoto, accepts the findings in the Presentence Investigation Report ("PSR"), with the following exceptions:

**Paragraphs 31 and 40: 12 Level Enhancement under §2D1.1(b)(6)(C).**

Ms. Hamamoto objects to the Probation Department's recommendation for a 12 level increase under §2D1.1(b)(6)(C) (endangering life of a minor). The Probation Department has included a 12 level increase in its sentencing calculations based on the fact that, at the time of her arrest, Ms. Hamamoto had her infant daughter with her in the hotel room in which there were chemicals present for use in the manufacturing of drugs. The Probation Department determined

ORIGINAL

*United States of America vs. Ginger Perez Hamamoto, et al.*
Criminal Case No. No. 06-00018
*Defendant Ginger Perez Hamamoto's Response to PSR*

the presence of these chemicals created a substantial risk to the life of the infant. While Ms. Hamamoto fully agrees that it was extremely poor judgment on her part to have her daughter with her that night, she disputes that the circumstances in the hotel room created a substantial risk of harm to her daughter's life.

Paragraph 31 of the PSR begins with the observation that some of the ingredients found in the hotel room were dangerous because they would emit toxic fumes "if used to manufacture methamphetamine." This finding does not justify an enhancement since there is no allegation or evidence that methamphetamine was ever manufactured in the room, or that Ms. Hamamoto and her child were present in the room at any time during which methamphetamine was being manufactured. The next sentence in paragraph 31 incorporates a conclusion for which there is no supporting evidence: "The presence of defendant's infant daughter in the hotel room during the manufacturing process creates (sic) a substantial risk of harm to her life." Nowhere in any police report, in any charging document, in any affidavit, or at any point in the extensive testimony given by the arresting officers during the hearing on the motion to suppress evidence, is there any indication that manufacturing of drugs was taking place while the defendant and her daughter were present in the hotel room. This is critical since, according to the probation officer, it was the danger created by the release of toxic fumes during the manufacturing process that created "the substantial risk of harm to the life" of Ms. Hamamoto's child. If, as all evidence in the case suggests, there was no manufacturing taking place in the hotel room while

2

*United States of America vs. Ginger Perez Hamamoto, et al.*
Criminal Case No. No. 06-00018
*Defendant Ginger Perez Hamamoto's Response to PSR*

Ms. Hamamoto and her child were present, the entire basis for a finding of substantial risk of harm to the life of the child collapses.

In paragraph 40 of the PSR, the probation officer implicitly recognizes that the evidence does not support a finding that manufacturing was taking place while the child was in the room when he states that the presence of the chemicals "could have created a substantial risk of harm to the defendant's six-month old daughter." Certainly all manner of conduct could in theory create a substantial risk of harm. The applicable guideline does not authorize an enhancement based on speculation about what could have happened under different facts. The plain language of section §2D1.1(b)(6)(C) dictates that an enhancement only be imposed when the offense "created a substantial risk of harm to the life of a minor." The fact that there could have been a substantial risk if circumstances had been different, i.e. if the minor had been present while manufacturing was taking place instead of at some other time, does not qualify as the type of risk encompassed by the plain language of §2D1.1(b)(6)(C).

Applying the factors set forth in the U.S.S.G. Commentary, §2D1.1 note 20, does not change this analysis:

    i.    The amount of chemicals is not fully specified, but the photographs taken by the police reveal that such chemicals as were present, were stored in proper containers with the lids or caps in place. There is no evidence that fumes were leaking from these sealed containers.

3

*United States of America vs. Ginger Perez Hamamoto, et al.*
Criminal Case No. No. 06-00018
*Defendant Ginger Perez Hamamoto's Response to PSR*

    ii. The chemicals were not disposed of and thus there was no risk from the improper disposal of chemicals. The chemicals were stored in containers and there is not evidence that toxic fumes were released into the environment.

    iii. The duration of the offense and the extent of the manufacturing operation. Whatever manufacturing was being planned was clearly on a small scale. Since no manufacturing was taking place in the very short time period Ms. Hamamoto was in the hotel room, this factor does not warrant a finding of substantial risk of harm to life.

    iv. The hotel room was a potentially dangerous place to make drugs. But there was no explicit or imminent danger because no manufacturing was taking place.

  As inexcusable as it was for Ms. Hamamoto to have her child with her when she went to that hotel room, the act of taking the child into that room was not an act which created a substantial risk of harm to the life of her child. For this reason the 12 level enhancement is not appropriate.

  Finally, Ms. Hamamoto notes that the enhancement of §2D1.1(b)(6)( C) only applies when the offense at issue involves the manufacturing of methamphetamine. Ms. Hamamoto has pled guilty to the charge of misprision of a felony. She has not been convicted of manufacturing or even attempting to manufacture methamphetamine. Accordingly, §2D1.1(b)(6)( C) is not applicable.

4

*United States of America vs. Ginger Perez Hamamoto, et al.*
Criminal Case No. No. 06-00018
*Defendant Ginger Perez Hamamoto's Response to PSR*

**Paragraph 35.** Contrary to what is stated in the PSR, Ms. Hamamoto denies saying that she purchased some of the ingredients to be used in the manufacturing of methamphetamine. It is possible that the probation officer confused Ms. Hamamoto's comments with those of co-defendant Love, who did admit buying some of the ingredients. What Ms. Hamamoto told the probation officer is that she stopped at the market on the way to the hotel and bought food and soft drinks for the going away party which was supposed to be held at the hotel.

**Paragraph 81.** Ms. Hamamoto denies stating that she could make $5,000 an hour selling drugs. Ms. Hamamoto is ashamed of many things she has done while on drugs, or in the pursuit of drugs, but drugs have never been a profit center for her. Just the opposite is true. What Ms. Hamamoto told the probation officer was that, during her years of drug abuse, she spent thousands of dollars on drugs. Ms. Hamamoto did not say that she accepted electronic goods or jewelry in exchange for ice; it was just other way around: she traded electronic goods and jewelry, which she got from her boyfriends, to feed her ice habit.

**Paragraphs 83 and 84.** Following her guilty plea, Ms. Hamamoto was permitted ,and in fact required, to attend a residential drug treatment program in Hawaii. Ms. Hamamoto did not successfully complete this program. The reasons for this are in dispute. Ms. Hamamoto would have stayed in the program, but she was told that she was being expelled for inappropriate comments during group therapy session. When she learned of this, she asked her counselor if

*United States of America vs. Ginger Perez Hamamoto, et al.*
Criminal Case No. No. 06-00018
*Defendant Ginger Perez Hamamoto's Response to PSR*

she should just go home, and she was told she should. She then withdrew from the program and went straight to the airport rather than wait until the following morning to be officially expelled.

**Paragraph 47.** The probation department's calculations include a 1 level reduction under §3E1.1(b), based on the fact that Ms. Hamamoto's prompt acceptance of responsibility spared the government the expense of preparing for trial. While Ms. Hamamoto appreciates this gesture, the 1 level decrease under §3E1.1(b) is only applicable in those cases in which the Base Offense Level is at least 16 before any reduction for acceptance of responsibility. As can be seen from the calculations in the following section, if the 12 level increase for endangerment of a minor is deleted from the calculations, the resulting Base Offense Level, before any reduction for acceptance of responsibility, is 9. As such, the 1 level decrease authorized under §3E1.1(b) is not applicable, and only a two level reduction for acceptance of responsibility is appropriate.

## II. Sentencing Recommendation.

1. **Calculation of Base Offense Level.** The correct calculation under the Guidelines results in a Total Offense Level 7, Criminal History Category I. A calculation of the Base Offense Level for Misprision of a Felony begins with U.S.S.G §2X4.1, which specifies a Base Offense Level nine levels below the offense level for the underlying felony on which the misprision charge is based. In this case, the underlying felony is the crime of conspiracy to manufacture methamphetamine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C)

6

*United States of America vs. Ginger Perez Hamamoto, et al.*
Criminal Case No. No. 06-00018
*Defendant Ginger Perez Hamamoto's Response to PSR*

and 846. The amount of drugs alleged by the government to be involved in the conspiracy is 1.99 grams of "ice." Under the drug tables, §2D1.1(c)(11), 1.9 grams of ice amounts to a Level 18 offense. A nine level reduction from Level 18, as required under §2X4.1, results in a Base Offense Level of 9. From this Base Level, a further reduction of 2 levels for acceptance of responsibility under §3E1.1(a) is appropriate based on Ms. Hamamoto's acceptance of responsibility. This results in a **Total Offense Level of 7.**

There is no dispute that Ms. Hamamoto has a Criminal History Category of I. See, PSR ¶ 53.

The sentencing range for a Level 7, Criminal History Category I offense is 0 - 6 months. This is a Zone A offense and probation is one option available to the Court.

2. **Factors Relevant to Sentencing**. In considering the sentence to impose, it is clear that Ms. Hamamoto is a deeply troubled young woman. If you met Ms. Hamamoto on the street, she most likely strike you as young, almost girlish, with a quick smile and a self effacing demeanor. On the other hand, the Mental and Emotional Health section of the PSR, ¶¶ 72-75, and the Substance Abuse section, ¶¶76-86, present a portrait of a woman who has a long history of underachievement, poor self-esteem, appalling choices in men, drug abuse and generally self-destructive behavior. So low is her self-esteem that even being raped by a prison guard while incarcerated in this case is met with a shrug and an almost "I deserve it" fatalism. In response to the sexual assault, like other dysfunctional areas of her life, Ginger shows no ability or

*United States of America vs. Ginger Perez Hamamoto, et al.*
Criminal Case No. No. 06-00018
*Defendant Ginger Perez Hamamoto's Response to PSR*

inclination to address her problems. No event in her life: not drug addiction, not having children by four different men, not being raped, not the threat of prison, not even the potential loss of her children, has led Ginger to confront whatever it is which makes her behave so badly. Her lack of introspection is crippling her ability to correct her behavior.

The power of Ginger's addiction is so strong that none of the counseling or treatment plans she has tried have been successful in enabling her to break from her pattern of addiction. Earlier in this case, prior to the entry of her guilty plea, and while on pretrial release and under a threat of imprisonment for any bad behavior, Ginger was not able to stay away from drugs. As a result, she was incarcerated (during which she was sexually assaulted). Yet, if you ask her why she does these harmful things, she honestly seem not to know. Not merely does she not know, but she seems not to understand that there may actually be an answer to that question.

Ms. Hamamoto's emotional and self-esteem problems, and her drug addiction, have caused her to become involved with a series of men, each of whom seems to have been a worse influence than the one before him. Among other things, this has resulted in Ms. Hamamoto becoming a mother to six children by four men. While Ms. Hamamoto loves her children, she clearly has been in no condition to raise them, and this responsibility has fallen on the shoulders of her mother an father. This has provided the children with a safe, and secure environment, but it does not replace the role that Ginger should be playing in their lives. It is not that Ms. Hamamoto has abandoned her children, she has always been in their lives. Rather, she has

*United States of America vs. Ginger Perez Hamamoto, et al.*
Criminal Case No. No. 06-00018
*Defendant Ginger Perez Hamamoto's Response to PSR*

always put her addiction first, and she has not been the caretaker and anchor her children need. Despite this, her children love their mother very much and have a surprisingly good relationship with her. The oldest child, who is in the fifth grade, is aware of what is going on and worries about her mother a great deal.

In the month that Ginger has been back from Hawaii, she has been under home confinement. She lives with her children and parents. She has been drug free this entire time, the longest she has been drug free in a very long time. She has also been spending time with her children and doing the things a mother should do. This has been an unintended blessing of her home confinement.

Ginger's prospects for continued clean behavior are not very good, unless she receives extensive counseling and treatment for her drug problem. The drug treatment options on Guam are limited, but there is counseling available. Assuming the Court agrees with the Guideline calculations of Total Offense Level 7, Criminal History Category I, Ms. Hamamoto asks that she be sentenced to period of continued home confinement, with a requirement that she attend counseling on a regular basis.

Respectfully submitted this 23rd day of August, 2006.

CIVILLE & TANG, PLLC

By _____
**G. PATRICK CIVILLE**
*Attorneys for Defendant Ginger P. Hamamoto*

# CERTIFICATE OF SERVICE

I, G. PATRICK CIVILLE, hereby certify that on the 24th day of August, 2006, a copy of the foregoing document was served by hand-delivery on the following:

> Marivic P. David, Esq.
> Assistant U.S. Attorney
> Office of the United States Attorney
> Suite 500, Sirena Plaza
> 108 Hernan Cortez Avenue
> Hagåtña, Guam 96910
>
> Stephen P. Guilliot
> United States Probation Department
> 2nd Floor U.S. Courthouse
> Hagatna, Guam 96910

DATED this 24th day of August, 2006.

CIVILLE & TANG, PLLC

By: _____
G. PATRICK CIVILLE
*Attorneys for Defendant*
*Ginger Perez Hamamoto*